UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DANNIE SIMS,

Plaintiff,

v.

Case # 13-CV-6496-FPG

DECISION & ORDER

MARK MONAGHAN, Monroe County Assistant
District Attorney, STEVE PEGLOW, Monroe County
Sheriff Investigator, MICHAEL ZAMIARA, Monroe
County Jail Deputy, MATTHEW PISTON, Monroe
County Assistant District Attorney,

Defendants.

## INTRODUCTION

In this civil rights action under 42 U.S.C. § 1983, *pro se* Plaintiff Dannie Sims ("Plaintiff") alleges Defendants violated his constitutional rights when he was arrested and prosecuted in 2009 for Attempted Identity Theft in the First Degree, Criminal Impersonation in the Second Degree, and Conspiracy in the Fifth Degree. ECF No. 1.

After Plaintiff's Complaint was screened by the Court pursuant to 28 U.S.C. § 1915(e)(2)(B), all claims and Defendants were dismissed except for a malicious prosecution claim against Monroe County Assistant District Attorney Mark Monaghan ("Monaghan"), Monroe County Assistant District Attorney Matthew Piston ("Piston"), Monroe County Sheriff Investigator Steve Peglow ("Peglow"), and Monroe County Jail Deputy Michael Zamiara ("Zamiara"). *See* ECF Nos. 6, 8.

In the instant Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendants argue that Plaintiff's malicious prosecution claim should also be dismissed. ECF No. 15. For the reasons stated below, Defendants' Motion is granted.[1]

## BACKGROUND[2]

Plaintiff, while in custody at the Monroe County Jail in Rochester, New York, "sought to expose to the public an abusive jail deputy actively engaged in abusing him and other inmates." To that end, Plaintiff and his girlfriend Kathleen Arnett ("Arnett") established a Twitter account on the Internet in the name of "Frank Zamiara" with the username "LitlZeezy." Although there was no one named Frank Zamiara at the Monroe County Jail, there was a deputy named Michael Zamiara. "Frank Zamiara" is a fictitious character who, in Plaintiff's words, was meant to act "as the voice and alter ego of abusive deputy used for the sole purpose of alerting the general public, including jail and county officials, that a public servant was abusing the authority vested in him with impunity."

Plaintiff sent letters to Arnett chronicling the actions of Michael Zamiara, with information gathered by Plaintiff and other inmates. Arnett then posted this information as "tweets" from LitlZeezy. Plaintiff states that he "at all times believed himself to be a whistle-blower and does not believe he was in violation of any laws."

On or about September 28, 2009, officials discovered the LitlZeezy Twitter account when Plaintiff's outgoing mail was intercepted and opened. Plaintiff was placed in Special Housing Unit under Administrative Segregation for 22 days.

---

[1]     Defendants also moved to stay discovery pending the outcome of the 12(c) motion. ECF No. 16. Because Defendants' 12(c) is granted, Defendants' motion to stay discovery is now moot.
[2]     The following allegations are taken from Plaintiff's Complaint (ECF No. 1). The documents attached to Plaintiff's Complaint are considered part of the Complaint, and are also considered by the Court in deciding Defendants' Motion for Judgment on the Pleadings. *See* Fed. R. Civ. P. 10(c); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).

Monaghan, an Assistant District Attorney for the County of Monroe, was "assigned to investigate evidence and criminal charges sought to be filed against plaintiff." On or about October 1, 2009, Monaghan "began and/or participated in an investigation to determine if criminal charges should be pursued against plaintiff." Plaintiff alleges Monaghan, along with Peglow and Zamiara, "began the malicious prosecution of plaintiff as retaliation, reprisal and punishment of plaintiff for plaintiff's role in attempting to expose [Michael Zamiara] via Twitter."

Also on October 1, 2009, Peglow filed a Felony Complaint charging Plaintiff and Arnett with the crimes of Attempted Identity Theft in the First Degree, Criminal Impersonation in the Second Degree, and Conspiracy in the Fifth Degree. In the Felony Complaint, Peglow does not mention the fact that the Twitter account was created in the name of the fictitious "Frank Zamiara," not Michael Zamiara, but he does allege that the tweets posted were "purporting to be from Deputy Zamiara." Peglow also states that the tweets were "authored to represent Deputy Zamiara as a racist, vindictive, neglectful and abusive Deputy Sheriff" and "intended to gain the termination or punishment of Deputy Zamiara." Specifically, the Felony Complaint states that the posts "included language, purporting to be from Deputy Zamiara, that included the terms 'monkeys', 'animals', 'darkies' and 'spic' to refer to Monroe County Jail Inmates." The Felony Complaint further alleges that Plaintiff and Arnett "intended to gain the termination or punishment of Deputy Zamiara which in turn would have caused a financial loss in excess of $2,000 to Deputy Zamiara."

Michael Zamiara filed a Supporting Deposition in connection with the Felony Complaint. In the Supporting Deposition, Zamiara states that he is currently assigned to the "4 south unit" of the Monroe County Jail. Zamiara states that on September 29, 2009, Peglow "notified me of a Twitter account that used the name Frank Zamiara who alleged to be a Deputy Sheriff working 4

south" and that the account "gave versions of interactions that I have had with inmates in the 4 south unit along with fabricated stories of alleged confrontations with inmates or actions by me."[3] Zamiara states that when he heard the description of the account, "I felt that the account was supposed to look like it was me writing it and that someone had assumed my identity on-line." Zamiara also states that he does not know Arnett and that he "did not give her permission to set up this or other account using my personal identifying information."

At a Preliminary Hearing on October 8, 2009, Plaintiff's appointed attorney moved to dismiss the Felony Complaint on the grounds that the Twitter account at issue purported itself to be operated by "Frank Zamiara," not the actual person named Michael Zamiara who filed the Supporting Deposition.   Monaghan, appearing as the prosecutor in the case, stated that this discrepancy was "clearly a typo" and moved to amend Michael Zamiara's Supporting Deposition so that the name "Frank Zamiara" would be replaced with "Michael Zamiara."  Plaintiff alleges Monaghan made the motion to amend "knowing he had no such intent" to actually amend the document.  Nevertheless, Monaghan's request was granted.  Plaintiff was released on his own recognizance and the case was never placed on any court calendar for further prosecution. However, Monaghan left the criminal charges in place for an additional eight months.

On May 12, 2010, Plaintiff appeared in Judicial Diversion Court on unrelated criminal charges.  Piston, appearing for the People, cited Plaintiff's still-pending attempted identity theft charges as evidence that Plaintiff should be denied access to the Judicial Diversion Program. Plaintiff's appointed attorney stated that he believed the identity theft charge "was dead." Monaghan, who was apparently also present, then participated in an off-the-record discussion with the Court and counsel.  Plaintiff's appointed attorney was then granted time to review the information offered by Piston.

---

[3]      In his Complaint, Plaintiff describes the Supporting Deposition as "false and legally deficient."  Reading the Complaint liberally to raise the strongest arguments it suggests, the Court will assume Plaintiff is alleging that the stories about Michael Zamiara posted on the LitlZeezy Twitter account were not in fact "fabricated."

On June 18, 2010, Monaghan attempted to secure an indictment against Plaintiff for Attempted Identity Theft in the First Degree, Criminal Impersonation in the Second Degree, and Conspiracy in the Fifth Degree.  However, the Grand Jury dismissed all charges.

## LEGAL STANDARDS

### 1.  Motion for Judgment on the Pleadings

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings after the pleadings are closed, so long as the motion is made "early enough not to delay trial."

The analysis used to decide a motion for judgment on the pleadings is the same as the analysis used to decide a motion to dismiss under Rule 12(b)(6).  *Keywell L.L.C. v. Pavilion Bldg. Installation Sys., Ltd.*, 861 F. Supp. 2d 120, 127 (W.D.N.Y. 2012).  Thus, the Court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiff's favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Because Plaintiff is proceeding *pro se*, the Court will "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." *Chavis v. Chappius*, 618 F.3d

162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted).  "Even in a *pro se* case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

### 2.  Failure to Respond

Plaintiff has failed to respond to Defendants' Motion for Judgement on the Pleadings.[4] If the pleadings are sufficient to withstand dismissal, however, "a failure to respond to a 12(c) motion cannot constitute a 'default' justifying dismissal of the complaint." *Maggette v. Dalsheim*, 709 F.2d 800, 802 (2d Cir. 1983).  Plaintiff's failure to respond therefore has no effect on the present analysis.

### 3.  Malicious Prosecution

To state a claim for malicious prosecution under § 1983, a plaintiff must show some deprivation of liberty consistent with the concept of "seizure" under the Fourth Amendment in addition to the elements of a malicious prosecution claim under state law.  *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010); *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995).  Under New York law, a defendant is liable for malicious prosecution where (1) defendant initiated a criminal prosecution against plaintiff; (2) the proceeding terminated in plaintiff's favor; (3) there was no probable cause for the criminal proceeding; and (4) the criminal proceeding was instituted with actual malice.  *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991).

---

[4]     Defendants' Motion was filed on March 11, 2015.  ECF No. 15.  On April 10, 2015, the Court granted Plaintiff's request for an extension of time to file a response and ordered Plaintiff to respond by May 13, 2015.  ECF No. 22.  Plaintiff has not responded to Defendants' Motion or requested an additional extension of time to do so.

## DISCUSSION

Defendants raise four arguments in support of their Motion for Judgment on the Pleadings: (1) Monaghan and Piston are entitled to absolute prosecutorial immunity; (2) Zamiara cannot be liable for malicious prosecution because he did not "initiate" the prosecution of Plaintiff; (3) probable cause existed to support the prosecution of Plaintiff for the crimes he was charged with; and (4) Peglow is entitled to qualified immunity. ECF No. 15-2. These arguments are addressed in turn.

## 1. Absolute Immunity

The Supreme Court in *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), held that prosecutors are entitled to absolute immunity from suit under § 1983 when performing functions that are "intimately associated with the judicial phase of the criminal process." Determining whether a particular action is entitled to absolute immunity involves a "functional approach." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). Absolute immunity applies to a prosecutor's actions taken in the course of his or her role as an advocate for the State, but not for "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer." *Imbler*, 424 U.S. at 430-31.

This functional approach to prosecutorial immunity "protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994). While understanding that absolute immunity "does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty," the Supreme Court in *Imbler* reasoned that "the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the

prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Imbler*, 424 U.S. at 427-28.

Because Plaintiff's allegations against Monaghan and Piston involve only actions taken by Monaghan and Piston while they were performing functions "intimately associated with the judicial phase of the criminal process," absolute immunity shields both Monaghan and Piston from liability.

### A. Monaghan

Plaintiff alleges Monaghan (1) was "assigned to investigate evidence and criminal charges sought to be filed against plaintiff"; (2) "began and/or participated" in the investigation to determine if criminal charges could be brought against Plaintiff; (3) stated at a Preliminary Hearing that the Felony Complaint was only deficient because of a "typo"; (4) left the deficient charges pending against Plaintiff for eight months thereafter; (5) participated in an off-the-record discussion with the Court and counsel about the pending identity theft charges at Plaintiff's unrelated Judicial Diversion Hearing; and (6) attempted to secure an indictment against Plaintiff even though Monaghan knew the charges to be legally defective.

Monaghan's statements at the Preliminary Hearing were made while acting as an advocate for the State, meaning that absolute immunity applies regardless of whether Monaghan intentionally deceived the Court.[5] *See Dory*, 25 F.3d at 83 (holding that absolute immunity applies where a prosecutor allegedly conspired to present false evidence at a criminal trial). Absolute immunity also protects Monaghan's decision to leave the charges pending against Plaintiff, even if Monaghan knew that the charges were facially deficient. *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981) (citing *Halpern v. City of New Haven*, 489 F. Supp. 841, 843

---

[5] The Supreme Court in *Imbler* sought to allay concerns that its decision left the public powerless to deter prosecutorial misconduct by noting that prosecutors could be punished criminally or subjected to professional discipline. *Imbler*, 424 U.S. at 428-29.

(D. Conn. 1980)). Monaghan was also acting as an advocate for the State when he participated in an off-the-record discussion about the identity theft charges at an unrelated Judicial Diversion Hearing. Whatever Monaghan may have said during that discussion, this activity was "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. Monaghan's attempt to secure an indictment against Plaintiff is similarly protected. *Maglione v. Briggs*, 748 F.2d 116, 118 (2d Cir. 1984) ("The presentation of a case to a grand jury falls squarely within the prosecutor's traditional function and is thus subject to absolute immunity under *Imbler*.") (citing *Powers v. Coe*, 728 F.2d 97, 104 (2d Cir. 1984)).

Plaintiff's Complaint also states that Monaghan was assigned to "investigate evidence and criminal charges" against Plaintiff and that Monaghan "began and/or participated in an investigation" to determine if criminal charges could be pursued against Plaintiff. This conclusory allegation, if supported by facts, might fall outside the protections of *Imbler*. However, because Plaintiff has not specified any facts or circumstances to support the inference that Monaghan ever functioned as an investigator in Plaintiff's case, these statements in Plaintiff's Complaint must be classified as a "bare assertions" not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 680-81; *see Maglione*, 748 F.2d at 118 (holding that plaintiff's allegation that the defendant-prosecutor was "in charge of the investigation" against him was conclusory, and therefore insufficient to escape the prosecutor's absolute immunity defense, because plaintiff failed to include any facts or circumstances to support this claim).

**B. Piston**

Plaintiff's only allegation as to Piston is that Piston, while prosecuting Plaintiff on unrelated grand larceny charges, cited Plaintiff's still-pending attempted identity theft charges as evidence that Plaintiff should be denied access to the Judicial Diversion Program. This action was clearly taken as part of Piston's role as an advocate for the state, and is therefore subject to

absolute immunity. *See Dory*, 25 F.3d at 83 (holding that absolute immunity applies where a prosecutor allegedly conspired to present false evidence at a criminal trial).

### 2.  Whether Michael Zamiara "Initiated" the Prosecution

Michael Zamiara argues that he is entitled to judgment on the pleadings because he did not "initiate" the criminal prosecution against Plaintiff.  This argument is unpersuasive.

For an individual to "initiate" a prosecution in the context of a malicious prosecution claim, "[t]he mere reporting of a crime to police and giving testimony are insufficient; it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000) (quoting *DeFilippo v. County of Nassau*, 183 A.D.2d 695, 696 (2d Dep't 1992) (quoting *Viza v. Town of Greece*, 94 A.D.2d 965, 966, 463 N.Y.S.2d 970, 971 (4th Dep't 1983))).  "Of course, the standard is different for law enforcement officers than it is for laymen. In malicious prosecution cases brought against police officers, plaintiffs have demonstrated that officers initiated criminal proceedings by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints." *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006) (citing *Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 383 (S.D.N.Y. 2005)).

Here, Zamiara filed a Supporting Deposition in connection with the Felony Complaint against Plaintiff.  Plaintiff alleges the Supporting Deposition included falsehoods and that Zamiara was motivated to charge Plaintiff criminally as retaliation "for plaintiff's role in attempting to expose him as abusive deputy."

The fact that Peglow was the one who actually signed the Felony Complaint does not, as Zamiara suggests, automatically absolve Zamiara of liability.  *Dickerson v. Monroe Cnty. Sheriff's Dep't*, 114 F. Supp. 2d 187, 190 (W.D.N.Y. 2000) (holding that state police officer

could not insulate himself from liability for malicious prosecution simply because he did not prepare or sign the charging information against arrestee). According to New York Criminal Procedure Law § 100.20, a supporting deposition is a written instrument "containing factual allegations of an evidentiary character, . . ., which supplement those of the accusatory instrument and support or tend to support the charge or charges contained therein." A supporting deposition is read in conjunction with the factual part of the felony complaint to determine if the felony complaint is facially sufficient. *See* N.Y. Crim. Proc. Law § 100.40 (McKinney). More than one person can "initiate" a prosecution in this context. *See, e.g., Dickerson*, 114 F. Supp. 2d at 190 (holding that both the officer who filed the charging information and another officer who actively participated in the prosecution had "initiated" the prosecution).

Zamiara also claims he was acting "as the victim of an alleged crime, not in his capacity as a Monroe County Sheriff's Deputy," when he signed the Supporting Deposition. However, he provides no support for the proposition that a law enforcement officer is considered a "layperson" in this context whenever the officer is purporting to be the victim of a crime. *See Llerando-Phipps*, 390 F. Supp. 2d at 383 (noting that in the context of deciding whether a defendant initiated a prosecution, "applying the layperson standard to the police would mean that law enforcement officers would never be liable for malicious prosecution").

Under these circumstances, and at this stage in the litigation, it is evident that Zamiara "played an active role in the prosecution" and therefore did "initiate" the prosecution against Plaintiff.

**3. Probable Cause**

Defendants argue that each of them should be granted judgment on the pleadings because probable cause existed to support the prosecution of Plaintiff. I agree.

The existence of probable cause is a complete defense to a malicious prosecution claim. *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013). In the context of a malicious prosecution claim, probable cause consists of "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Id.* An officer may have had probable cause even though, ultimately, the officer was mistaken. *Colon v. City of New York*, 60 N.Y.S.2d 78, 82 (1983).

Because Attempted Identity Theft in the First Degree, Criminal Impersonation in the Second Degree, and Conspiracy in the Fifth Degree involve different elements and different levels of culpability, each charge will be analyzed separately for the purposes of this analysis. *Morris v. Silvestre*, 604 F. App'x 22, 25 (2d Cir. 2015) (citing *Posr*, 944 F.2d at 100).

## A. Attempted Identity Theft in the First Degree

Plaintiff was charged with Attempted Identity Theft in the First Degree pursuant to New York Penal Law §§ 190.80(2) and 110.00. A person is guilty of identity theft in the first degree when he or she "knowingly and with intent to defraud assumes the identity of another person by presenting himself or herself as that other person, or by acting as that other person or by using personal identifying information of that other person, and thereby: . . . (2) causes financial loss to such person in an aggregate amount that exceeds two thousand dollars." New York Penal Law § 190.80(2). "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." NY Penal Law § 110.00.

Here, Plaintiff states in his Complaint that he and Arnett created a Twitter account under the name "Frank Zamiara," that the information posted by the account detailed Michael Zamiara's actions within the Monroe County Jail, and that Plaintiff's intent was to expose Michael Zamiara as an abusive deputy to the general public, including jail and county officials.

12

The Felony Complaint, attached to Plaintiff's Complaint in this action, states that posts by the LitlZeezy Twitter account "included language, purporting to be from Deputy Zamiara, that included the terms 'monkeys', 'animals', 'darkies' and 'spic' to refer to Monroe County Jail Inmates." Michael Zamiara's Supporting Deposition states that he was currently assigned to the "4 south unit" in the Monroe County Jail, that the LitlZeezy account "used the name Frank Zamiara who alleged to be a Deputy Sheriff working 4 south," and that at the time the posts were made Plaintiff was also in the 4 south unit. He also states that the content of the LitlZeezy posts would have caused him to lose over two thousand dollars in lost salary and benefits if his employers had believed the posts were made by him.

Under those circumstances, probable cause existed to charge Plaintiff with Attempted Identity Theft in the First Degree. Although the LitlZeezy Twitter account was made in the name of "Frank Zamiara" rather than Michael Zamiara, everything except for the first name pointed to Michael Zamiara. Plaintiff's stated purpose, which was to publicize Michael Zamiara's actions within the Monroe County Jail, supports this conclusion. New York Penal Law § 190.77(1) defines the term "personal identifying information" for offenses involving theft of identity and includes both "name" and "place of employment" as examples of personal identifying information. There is currently a split within the Appellate Divisions of the State of New York as to whether the phrase "assumes the identity of another person" in § 190.80 means that the government must prove that the defendant assumed the identity of another person as a discrete element of the offense. Compare *People v. Barden*, 983 N.Y.S.2d 534-43 (1st Dep't 2014) (assumption of identity must be proven as a discrete element) with *People v. Yuson*, 133 A.D.3d 1221 (4th Dep't 2015) (assumption of identity is not a discrete element). Even if the fact that Plaintiff used a fictitious first name could have precluded Plaintiff from ever being *convicted* of identity theft, it does not mean that Defendants lacked probable cause to charge Plaintiff. It is

also important to note that Plaintiff was not charged with the completed crime of identity theft, but rather the inchoate crime of *attempted* identity theft.

The fact that Plaintiff alleges his sole intent was to act as a whistle-blower, which is accepted as true for the purposes of this discussion, also would have prevented Plaintiff from being convicted of identity theft. But again, this fact does not mean that Defendants lacked probable cause. Given the information available to Defendants at the time, a reasonable person could have concluded that Plaintiff possessed intent to defraud. *See* DEFRAUD, Black's Law Dictionary (10th ed. 2014) ("To cause injury or loss to (a person or organization) by deceit; to trick (a person or organization) in order to get money.").

## B. Criminal Impersonation in the Second Degree

Plaintiff was also charged with Criminal Impersonation in the Second Degree pursuant to New York Penal Law §§ 190.25(1) and 190.25(4). A person is guilty under § 190.25(1) if he or she "[i]mpersonates another and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another." A person is guilty under § 190.25(4) if he or she "[i]mpersonates another by communication by internet website or electronic means with intent to obtain a benefit or injure or defraud another, or by such communication pretends to be a public servant in order to induce another to submit to such authority or act in reliance on such pretense."

Again, it is possible that Plaintiff would not have been convicted of Criminal Impersonation in the Second Degree because his sole intent was to act as a whistle-blower and expose the public to Michael Zamiara's abusive actions within the Monroe County Jail. But given the information available, a reasonable person in the Defendants' position could conclude that Plaintiff intended to injure or defraud Michael Zamiara. Under the circumstances, probable cause existed to charge Plaintiff with Criminal Impersonation in the Second Degree.

### C. Conspiracy in the Fifth Degree

The third and final crime Plaintiff was charged with was Conspiracy in the Fifth Degree pursuant to New York Penal Law § 105.05(1). Under that section, a person is guilty when he or she has the intent for a felony to be performed and agrees with one or more persons to engage in or cause the performance of that felony.

As outlined above, probable cause existed to believe Plaintiff intended to commit the crime of Identity Theft in the First Degree, which is a felony. *See* NY Penal Law § 190.80. In Plaintiff's Complaint, Plaintiff admits that he worked in tandem with his girlfriend Kathleen Arnett to set up the Twitter account and post information. Therefore, there was also probable cause to believe Plaintiff had committed Conspiracy in the Fifth Degree.

### 4. Qualified Immunity

Peglow argues that he is entitled to qualified immunity in this case, and therefore cannot be held liable to Plaintiff for malicious prosecution. I agree.

The doctrine of qualified immunity shields government employees acting in their official capacities from suits for damages under § 1983 unless (1) the conduct at issue violated plaintiff's clearly established constitutional rights and (2) a reasonable official in the defendant's position would have known the conduct amounted to a constitutional violation. *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996). Here, it is not disputed that freedom from malicious prosecution is a clearly established right. Therefore, the question of qualified immunity in this case turns on whether Peglow's action in filing a Felony Complaint against Plaintiff was objectively reasonable under the circumstances. *Id.* In this context, "[a]n officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest—that is, if officers of reasonable competence could disagree on whether the probable

cause test was met." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (quoting *Lennon v. Miller*, 66 F.3d 416, 423-24 (2d Cir. 1995)) (internal quotations omitted).

As discussed above, Peglow had probable cause to believe that Plaintiff had committed the crimes he was ultimately charged with.  Even if probable cause did not actually exist, officers of reasonable competence could disagree on whether the probable cause test was met.  Peglow is therefore entitled to qualified immunity.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings (ECF No. 15) is GRANTED.  Defendants' Motion to Stay (ECF No. 16) is DENIED AS MOOT.  Plaintiff's Complaint is dismissed with prejudice.  The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: December 21, 2015
       Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court